UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENN H., | ) |
| Plaintiff, | ) |
| | ) No. 18 C 6008 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Glenn H. seeks to reverse the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Because the Court concludes that the Administrative Law Judge ("ALJ") failed to consider and resolve multiple sources of contradictory evidence, the Court reverses the ALJ's decision and remands this case to the Social Security Administration for further proceedings consistent with this Opinion.

## BACKGROUND

### I. Procedural History

Born September 4, 1963, Glenn H. worked as a carpenter for decades until a 2012 injury. AR 209–10. Glenn H. applied for DIB on August 23, 2013, alleging disability beginning August 23, 2012. AR 423–29. The agency denied his application both initially and on reconsideration. AR 261–72, 274–90. On September 14, 2016, following Glenn H.'s timely request, the ALJ held a hearing at which Glenn H., a medical expert, a psychological expert, a vocational expert, and Glenn H.'s wife testified. AR 205–59. On December 1, 2016, the ALJ issued his opinion finding that Glenn H. was disabled within the meaning of the Social Security Act from August

23, 2012 to March 13, 2014, but that Glenn H. has been able to perform substantial gainful activity since March 14, 2014 based on his improved medical condition. AR 182–204. The ALJ found that Glenn H.'s impairments medically equaled Appendix Listing 1.02(B) from August 23, 2012, through March 13, 2014. AR 191; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(B). For the period thereafter, the ALJ found that medical improvement occurred and Glenn H. retained the residual functional capacity ("RFC") to perform a limited range of light work, AR 192; that he was unable to perform his past work, but could perform other jobs existing in the national economy, AR 195; and was therefore not disabled under the Social Security Act after March 13, 2014, AR 196. On March 27, 2018, the Appeals Council declined to review the ALJ's decision, causing it to constitute the final decision of the Commissioner. AR 1–7; *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) ("Because the Appeals Council denied review of Luna's application, the ALJ's decision became the final decision of the Secretary[.]"); 20 C.F.R. § 404.981.

## II. Relevant Medical History

### A. Glenn H.'s Injury and Recovery

At work on August 23, 2012, Glenn H. fell about fifteen feet from a ladder, striking his head and losing consciousness, fracturing both wrists, his face and jaw, and injuring his left shoulder and neck. AR 744–45, 793, 1284–89. He required surgery to repair his jaw and facial fractures. AR 749–52. He had surgery on his right wrist in January 2013 and a partial right wrist fusion in July 2013. AR 606–07, 615–17. He had a left shoulder labrum tear for which he had surgery in November 2012. AR 608–09. MRIs of Glenn H.'s cervical spine revealed disc bulges and foraminal stenosis. AR 874–75.

The restrictions on how much weight Glenn H. could lift and the use of his wrists limited the progress of his overall healing. AR 847, 853–55, 857, 878, 2283, 2728, 3438. In March 2013 and June 2014, Glenn H.'s doctors found his spinal injury was at "maximum medical improvement" ("MMI"). AR 643–44, 839. Doctors found his wrists at MMI in March 2014, AR 845, 904, and his left shoulder at MMI by May 2014, AR 645–48, 3427–28. He underwent a functional capacity evaluation ("FCE") on June 26, 2014, AR 2769–76 (summary report), 2779–2812 (full report), in which the evaluator found that Glenn H. had the physical capacity for light work, but that he was unable to maintain a position, standing or sitting, for longer than fifty minutes before having increased back and neck pain. AR 2769.

After his 2012 injury, Glenn H. reported lower back pain, complaining of worsening back pain from 2014 through 2016, with flare-ups resulting from attempted activity. AR 853–55, 3415–16, 3419–22, 3424–26, 3548–53. Lumbar MRIs showed disc bulges, contact with the L5 nerve root, and "multiple sites of potential pain generation." AR 854, 2292, 3398–99. Doctors found limited lumbar range of motion, meralgia paresthetica in Glenn H.'s left leg, and positive straight leg raise tests. AR 854, 2462, 3416, 3420, 3422, 3426, 3479. His physical therapy included treatment for his lower back from 2014 through 2015. AR 884, 2667, 2691–2767, 2813–49, 2852–2914. In 2016, he saw a chiropractor for repeated exacerbations of back pain with radiation into his legs. AR 3555–61. In May 2015, he received an evaluation for fusion surgery; without fusion surgery, doctors opined that his back was at MMI. AR 3416, 3421.

Glenn H. has also received diagnoses of a traumatic brain injury, post-concussion syndrome, and a cognitive disorder. AR 564, 811, 969, 998, 1292–93, 2462, 3520, 3553. Neurologists and other providers have evaluated and treated his dizziness, hearing loss and tinnitus, headaches, memory issues, and personality changes. AR 573, 596, 598, 794, 993–98,

3519–21, 3527–29, 3548–53. Dr. Colin A. Brietzke, Psy.D., conducted a neuropsychological evaluation in January and February 2014 that found weakness in fine motor functioning and neuropsychological measures, and mood and personality changes. AR 825–35. Dr. Brietzke diagnosed a traumatic brain injury, personality change due to traumatic brain injury, and mild neurocognitive disorder. AR 826. Dr. Nancy Landre, Ph.D., conducted another neuropsychological evaluation in July 2014 that found that Glenn H. had impaired fine motor speed but normal cognitive performance, and "clearly abnormal" psychological testing suggesting mood and somatoform disorders. AR 972–81. Dr. Landre opined that Glenn H. was not able to work from a psychological standpoint, that he had not reached MMI from a neuropsychological perspective, but that with treatment "he should be able to resume some work activity within the next one to three months, with gradual increases in responsibilities and hours worked as his psychological condition improves." AR 978. Dr. Chirag Raval, M.D., conducted an examination in July 2014 and diagnosed depression secondary to a medical condition and cognitive disorder secondary to mild traumatic brain injury. AR 966–69.

### III. Hearing Testimony

Glenn H. testified that he has not worked since his accident. AR 209. Currently, he testified that he is not able to work because his back issues cause numbness and pain in his legs, occasionally his back goes out altogether, and he has sharp pains and occasional swelling and stiffness in his wrists. AR 213. He takes either Advil, Tylenol, or prescription pain medication depending on the severity of his pain each day. AR 213. Glenn H. also testified that he is no longer taking medication for his depression since the medications he tried did not help, they either made him more depressed or caused harmful side effects. AR 214. His head injury has caused him frequent headaches and issues with both memory and focus. AR 216.

Dr. Ashok Jilhewar, M.D., testified to Glenn H.'s various physical impairments. AR 220–33. He identified and summarized the injuries that resulted from Glenn H.'s fall and added the exacerbation of his lower back pain since 2014. AR 221–28. Dr. Jilhewar found that because of Glenn H.'s bilateral wrist fractures, his impairments equaled Listing 1.02(B) from August 23, 2012, through March 13, 2014. AR 228. On March 14, 2014, the treating hand surgeon reported Glenn H. "was doing 'okay'" and objective clinical findings had improved. AR 228. Dr. Jilhewar found that from March 14, 2014 onward, Glenn H. was limited to "light physical capacity," meaning that he could lift and carry up to twenty pounds occasionally, up to five to ten pounds frequently, and was able to sit, stand, or walk up to six hours in an eight-hour workday with the normal breaks. AR 229.

Dr. Michael C. Rabin, Ph.D., testified to Glenn H.'s mental impairments. AR 233–46. He testified to Glenn H.'s adjustment disorder with depressed mood and that at the time of Dr. Landre's evaluation in July 2014, Glenn H. had moderate limitation in activities of daily living and social functioning, and marked limitation in pace, persistence, and concentration. AR 236, 242. Dr. Rabin testified that the limitation on Glenn H.'s concentration was "so severe he would not be able to maintain adequate focus on the job because of distractions from psychological symptomology." AR 236–37. Dr. Rabin also testified that it was not possible for him to determine the degree of any current depression because there was no mental medical evidence in the record since July 2014. AR 237. Dr. Rabin also stated that because "[Glenn H.] had no [mental] treatment for two years, I have to assume that he must have improved or he would have sought out treatment." AR 238.

GleeAnn Kehr testified as a vocational expert. AR 246–51. She found that Glenn H. would not be able to return to his past work, but cited three light, unskilled jobs: rental clerks,

5

counter clerks, and ushers, that would be available for Glenn H. based solely on his physical limitations, without mention of any mental limitations. AR 248–49.

Angela H., Glenn H.'s wife, testified to their personal health insurance coverage. AR 253–58. She testified that "Workers' Comp is denying him to go to any doctors." AR 255.

## IV. ALJ's Decision

Following the five-step analysis used by the Social Security Administration to evaluate disability, the ALJ found at step one that Glenn H. had not engaged in substantial gainful activity since August 23, 2012. AR 189. At step two, the ALJ found "that the claimant's mental impairments imposed no more than a minimal effect upon his ability to perform work activity," and gave "limited weight to the Disability Determination reviewing psychologists who found severe impairments as the evidence as a whole, including treatment records available at the hearing level as well as the claimant's testimony, do not support that the clamant [sic] has any severe mental impairment," but that Glenn H.'s physical impairments, the traumatic brain injury, nasal fracture, mandible fracture, hearing loss, neck pain, left shoulder impairment, bilateral wrist fractures, back pain, and adjustment disorder constituted severe impairments from August 23, 2012 through March 13, 2014. AR 189–190. The ALJ found that during that period, Glenn H.'s bilateral wrist impairments medically equaled the criteria of second 1.02B of 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 191. Because of this, the ALJ found Glenn H. was under a disability, as defined by the Social Security Act during that period. AR 192.

The ALJ found that "[o]n March 14, 2014, medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of this decision. Thus, the claimant's disability ended on March 14, 2014." AR 186. The ALJ found that beginning March 14, 2014, Glenn H. no longer had a

qualifying impairment because of the determination that his wrists had achieved MMI, citing Dr. Jilhewar's testimony. AR 191–92. In making his determination that Glenn H. had the RFC to perform light work with certain limitations, the ALJ did not make any mention of the reports of Drs. Brietzke, Landre, or Raval, or the testimony of Dr. Rabin, or any of Glenn H.'s asserted mental impairments, and relied almost entirely on Dr. Jilhewar's review of the medical evidence regarding Glenn H.'s physical impairments.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (citation omitted) (internal quotation marks omitted). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But the Court may order reversal and remand if the ALJ committed an error of law or the decision is based on serious factual mistakes or omissions. *Id*. at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[H]e need not provide complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)), but "[i]f a decision 'lacks evidentiary

support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## II. Disability Standard

To qualify for DIB, a claimant must show that he is disabled, i.e. that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). To determine whether a claimant is disabled, the Social Security Administration uses a five-step sequential analysis. 20 C.F.R. § 404.1520; *Kastner*, 697 F.3d at 646. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment(s) meet or equal a listed impairment in the Social Security regulations, precluding substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) meet or medically equal a listing, the individual is considered disabled; if not, the analysis continues to step four. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ assesses the claimant's RFC and ability to engage in past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can engage in past relevant work, he is not disabled. *Id*. If he cannot, the ALJ proceeds to step five, in which the ALJ determines whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. 20

C.F.R. § 404.1520(a)(4)(v). An individual is not disabled if he can engage in other work. *Id*. The claimant bears the burden of proof on steps one through four, while the burden shifts to the government at the fifth step. *Weatherbee*, 649 F.3d at 569.

## ANALYSIS

In seeking to reverse the ALJ's decision, Glenn H. argues that (1) substantial evidence does not support the ALJ's RFC assessment where he did not address evidence supporting additional physical limitations after March 14, 2014, and excluded any mental limitations; and (2) the ALJ improperly discounted Glenn H.'s subjective allegations.

### I. Substantial Evidence

Glenn H. first argues that the ALJ's RFC assessment is incomplete because he ignored evidence of additional physical limitations and excluded any mental limitations. Regarding the additional physical limitations, Glenn H. argues that the ALJ's wholesale adoption of Dr. Jilhewar's opinion and failure to discuss various medical reports rendered the RFC incorrect and inadequate. Regarding the mental limitations, Glenn H. argues that the ALJ failed to even minimally discuss evidence that contradicted the Commissioner's position and improperly relied on Dr. Rabin's opinion in finding that no mental limitations existed after March 14, 2014.

An ALJ must explain how he reaches his conclusion about the RFC of a claimant and support that conclusion with evidence from the record. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities[.]"); *Eakin v. Astrue*, 432 F. App'x 607, 611 (7th

9

Cir. 2011) ("The RFC determinations should include a discussion describing how the evidence, both objective and subjective, supports the ultimate conclusion.").

A. **Physical Limitations**

Here, the ALJ failed to discuss several pieces of evidence, namely doctor's notes and physical therapy reports of limitations due to Glenn H.'s back pain, such as exacerbation from bending or other simple activities, *e.g.*, AR 844, 884–85, 2461, 2747, 2815–16, 2872, 2876, 3391–94, 3416, 3420, 3422, 3425, 3548, 3555, 3560; lumbar spine-related objective findings, such as a limited range of motion, decreased leg sensation, positive straight leg raise tests, and an antalgic gait, *e.g.*, AR 854, 2462, 2715, 3416, 3420, 3422, 3426, 3479; lumbar limitations reported by Glenn H.'s physical therapists, such as only being able to walk or stand for twenty minutes and having difficulty getting up from a chair, *e.g.*, AR 2816–17, 2834, 2848; and Glenn H.'s hand tremors, *e.g.*, AR 563–64, 567–68, 579, 590–91, 827, 854, 973, 975, 993. The vast majority of this evidence comes from doctor's visits and physical therapy sessions occurring after the March 14, 2014 date, *e.g.*, AR 2461 (Dr. Sayyad notes on April 28, 2015), AR 2747 (physical therapy notes for May 1, 2014), AR 2815 (physical therapy notes for February 23, 2015), AR 2872 (physical therapy notes for April 15, 2015), and so forth.

"While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). Most notably, the ALJ did not discuss the June 26, 2014, FCE that found that Glenn H. could not "maintain a position, i.e. sitting or standing, for longer than 50 minutes before having increased back and/or neck pain and needing to change position." AR 2769. Though the ALJ acknowledged one report that labeled Glenn H.'s back pain as his "big problem," AR 193 (citing AR 3420–21), the ALJ neither

addresses nor resolves the conflicts between Dr. Jilhewar's opinion, on which the ALJ all but solely relies and which makes no mention of Glenn H.'s need for frequent position changes, and the June 26, 2014 FCE. The ALJ erred in not addressing these conflicts; the RFC assessment is incomplete without this analysis. SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Not only does the ALJ's failure to address these conflicts render the RFC assessment incomplete, it also renders the hypothetical questions posed to the vocational expert inadequate. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Because the administrative judge used this RFC as the basis for his hypothetical question to the vocational expert, his hypothetical question also failed to include all of the necessary information. Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record. It is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." (citation omitted)). Because the hypothetical question was based on the incomplete RFC assessment, the hypothetical question itself also fell short. *Id*. at 1004. Therefore, the ALJ's finding at the fifth step, that Glenn H. is not disabled because he could work in the three potential jobs that the vocational expert provided based on the flawed hypothetical question, is untenable. *Id*. at 1004–05 ("By the time the ALJ reached the fifth step of the five-step disability evaluation process, the entire finding of disability or no disability hinged on the validity of the hypothetical question. When the hypothetical question is fundamentally flawed because it is limited to the facts

presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.").

B.  **Mental Limitations**

The ALJ found that the evidence did not support that Glenn H. had "any severe mental impairment." AR 190. Glenn H. argues that the ALJ's reasons for discounting the severity of his adjustment disorder were erroneous, and that the ALJ erred by failing to consider any non-severe mental impairment in his RFC.

Here again, the ALJ failed to discuss various pieces of evidence in his findings, such as Dr. Brietzke's February 2014 neuropsychological evaluation, AR 825–35; Dr. Raval's July 2014 consultative examination, AR 966–69; and Dr. Landre's July 2014 neuropsychological evaluation, AR 972–81. Each of these reports in the medical record cited limitations, especially Dr. Landre's, in which Dr. Landre states that "[f]rom a psychological standpoint, I do not feel that [Glenn H.] is capable of working at this time," based on various psychological symptoms. AR 978. These reports directly contradict the ALJ's finding that Glenn H. has no psychological limitation, therefore, just as with the physical limitations that he failed to discuss, the ALJ erred in ignoring this evidence and the RFC assessment is incomplete. *Godbey*, 238 F.3d at 808 ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position.").

II. **Glenn H.'s Subjective Allegations**

Finally, the ALJ erred in discounting Glenn H.'s subjective allegations of his mental limitations based on Dr. Rabin's assumption that because Glenn H. had not received mental health treatment for over two years, his condition "must have improved." AR 238. Indeed, the

ALJ bases his finding almost solely on Dr. Rabin's testimony: "Dr. Rabin reviewed the evidence of record and testified that the claimant did not any mental health treatment for two years [sic]." AR 190. While ALJs are permitted to consider infrequent treatment or failure to follow a treatment plan in assessing the credibility of a claimant's subjective allegations, "the ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see* SSR 16-3p, 2016 WL 1119029 at *8–9. Glenn H. and his wife testified to their hardship in affording his mental health treatments; indeed, his wife testified specifically that "Workers' Comp is denying him to go to any doctors." AR 255. "An inability to afford treatment is one reason that can provide insight into the individual's credibility." *Craft*, 539 F.3d at 679. Because the ALJ did not account for Glenn H.'s explanation for failure to pursue treatment, the ALJ erred in discounting Glenn H.'s credibility and instead relying on Dr. Rabin's assumption that Glenn H.'s condition had improved. *Pierce v. Colvin*, 739 F.3d 1046, 1050–51 (7th Cir. 2014) (finding ALJ's credibility assessment "cannot be deemed harmless" where it relied on the absence of treatment and ALJ knew of claimant's insurance hardships).

## CONCLUSION

For the foregoing reasons, the Court grants Glenn H.'s motion for summary remand [20]. The Court reverses the ALJ's decision and remands this case to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

Dated: November 18, 2019

_____
SARA L. ELLIS
United States District Judge